**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

KNIGHT FIRST AMENDMENT INSTITUTE
AT COLUMBIA UNIVERSITY; REBECCA
BUCKWALTER; PHILIP COHEN; HOLLY
FIGUEROA; EUGENE GU; BRANDON
NEELY; JOSEPH PAPP; and NICHOLAS
PAPPAS,

              Plaintiffs,

     v.

DONALD J. TRUMP, President of the United
States; SEAN M. SPICER, White House Press
Secretary; and DANIEL SCAVINO, White
House Director of Social Media and Assistant
to the President,

              Defendants.

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

1.     President Trump's Twitter account, @realDonaldTrump, has become an important

source of news and information about the government, and an important public forum for speech

by, to, and about the President. In an effort to suppress dissent in this forum, Defendants have

excluded—"blocked"—Twitter users who have criticized the President or his policies. This

practice is unconstitutional, and this suit seeks to end it.

2.     As the Supreme Court recognized just a few weeks ago, social media platforms

like Facebook and Twitter provide "perhaps the most powerful mechanisms available to a private

citizen to make his or her voice heard." *Packingham v. North Carolina*, slip op. at 8, 582 U.S.

____ (2017). These platforms have been "revolution[ary]," not least because they have

transformed civic engagement by allowing elected officials to communicate instantaneously and directly with their constituents. "Governors in all 50 States and almost every Member of Congress have set up [Twitter] accounts for this purpose," *id.* at 5, allowing citizens to "petition their elected representatives and otherwise engage with them in a direct manner," *id.* at 8. Twitter enables ordinary citizens to speak directly to public officials and to listen to and debate others about public issues, in much the same way they could if they were gathered on a sidewalk or in a public park, or at a city council meeting or town hall.

3.      Because of the way the President and his aides use the @realDonaldTrump Twitter account, the account is a public forum under the First Amendment. Defendants have made the account accessible to all, taking advantage of Twitter's interactive platform to directly engage the President's 33 million followers. The President's tweets routinely generate tens of thousands of comments in the vibrant discussion forums associated with each of the President's tweets. Further, Defendants have promoted the President's Twitter account as a key channel for official communication. Defendants use the account to make formal announcements, defend the President's official actions, report on meetings with foreign leaders, and promote the administration's positions on health care, immigration, foreign affairs, and other matters. The President's advisors have stated that tweets from @realDonaldTrump are "official statements," and they have been treated as such by politicians, world leaders, the National Archive and Records Administration, and federal courts.

4.      Plaintiffs include individuals from across the country who have been blocked from the @realDonaldTrump account because of opinions they expressed in replies to the President's tweets. Because of their criticism of the President, these Plaintiffs have been prevented or impeded from viewing the President's tweets, from replying to the tweets, from

viewing the discussions associated with the tweets, and from participating in those discussions. Defendants' actions violate the First Amendment rights of these individual Plaintiffs as well as those of other Twitter users, like Plaintiff Knight First Amendment Institute, that follow the @realDonaldTrump account and are now deprived of their right to read the speech of the dissenters who have been blocked.

5.      Plaintiffs respectfully ask that the Court declare that the viewpoint-based exclusion of the individual Plaintiffs violates the First Amendment, and order the Defendants to restore their access.

### Jurisdiction and Venue

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201–2202.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (e)(1). A substantial part of the events giving rise to this claim occurred in this District, and each Defendant is an officer of the United States sued in his official capacity.

### Parties

8.      The Knight First Amendment Institute at Columbia University ("Knight Institute") is a section 501(c)(3) organization based in New York, NY that works to defend and strengthen the freedoms of speech and the press in the digital age through strategic litigation, research, and public education. The Knight Institute's staff operates a Twitter account under the handle @knightcolumbia.

9.      Plaintiff Rebecca Buckwalter, who resides in Washington, DC, is a writer and political consultant. She operates a verified Twitter account under the handle @rpbp.

10.    Plaintiff Philip Cohen, who resides in Takoma Park, MD, is a professor of sociology at the University of Maryland, College Park. He operates a verified Twitter account under the handle @familyunequal.

11.    Plaintiff Holly Figueroa, who resides in Mercer Island, WA, is a political organizer and songwriter. She operates a verified Twitter account under the handle @AynRandPaulRyan.

12.    Plaintiff Eugene Gu, who resides in Nashville, TN, is a resident in general surgery at Vanderbilt University Medical Center and the CEO of Ganogen Research Institute. He operates a Twitter account under the handle @eugenegu.

13.    Plaintiff Brandon Neely, who resides in Tomball, TX, is a police officer. He operates a verified Twitter account under the handle @BrandonTXNeely.

14.    Plaintiff Joseph Papp, who resides in Bethel Park, PA, is a former professional road cyclist and current anti-doping advocate and author. He operates a verified Twitter account under the handle @joepabike.

15.    Plaintiff Nicholas Pappas, who resides in New York City, is a comic and writer. He operates a verified Twitter account under the handle @Pappiness.[1]

16.    Defendant Donald Trump is President of the United States and is sued in his official capacity only. President Trump operates and/or oversees the operation of a verified Twitter account under the handle @realDonaldTrump. The President and/or his subordinates have blocked all of the Plaintiffs except the Knight First Amendment Institute from this account.

17.    Defendant Sean Spicer is the White House Press Secretary and Acting Communications Director and is sued in his official capacity only. Mr. Spicer directs or

---

[1] For ease of reference, Plaintiffs other than the Knight Institute are referred to herein as the "Individual Plaintiffs," collectively.

coordinates all White House communications. Upon information and belief, Mr. Spicer has the ability to block and unblock individuals from the @realDonaldTrump account.

18.     Defendant Daniel Scavino is the White House Social Media Director and Assistant to the President and is sued in his official capacity only. Mr. Scavino posts messages on behalf of President Trump to @realDonaldTrump and other social media accounts, including @POTUS and @WhiteHouse. Upon information and belief, Mr. Scavino has the ability to block and unblock individuals from the @realDonaldTrump account.

### Factual Allegations

**A.     Twitter**

19.     Twitter is a social media platform with more than 300 million active users worldwide, including some 70 million in the United States. The platform allows users to publish short messages, to republish or respond to others' messages, and to interact with other Twitter users in relation to those messages. Speech posted on Twitter ranges from personal insult to poetry, but particularly relevant here is that a significant amount of speech posted on the platform is speech by, to, or about the government.

20.     Users. A Twitter "user" is an individual who has created an account on the platform. A user can post "tweets," up to 140 characters in length, to a webpage on Twitter that is attached to the user's account. Tweets can include photographs, videos, and links. Some Twitter users do not tweet—i.e., publish messages—at all. Others publish hundreds of messages a day.

21.     Timelines. A Twitter user's webpage displays all tweets generated by the user, with the most recent tweets appearing at the top of the page. This display is known as a user's "timeline." When a user generates a tweet, the timeline updates immediately to include that tweet. Anyone who can view a user's public Twitter webpage can see the user's timeline. Below is a screenshot of part of the timeline associated with the @realDonaldTrump account:



22.      A Twitter user must have an account name, which is an @ symbol followed by a

unique identifier (e.g., @realDonaldTrump), and a descriptive name (e.g., Donald J. Trump). The

account name is called the user's "handle." Alongside the handle, a user's webpage will display

the date the user joined Twitter and a button that invites others to "Tweet to" the user. (This

button is visible only to other Twitter users.) A user's Twitter webpage may also include a short

biographical description; a profile picture, such as a headshot; a "header" image, which appears

as a banner at the top of the webpage; the user's location; a button labeled "Message," which

allows two users to correspond privately; and a small sample of photographs and videos posted

to the user's timeline, which link to a full gallery. Thus, part of the webpage for

@realDonaldTrump recently looked like this:



23.   <u>Tweets</u>. An individual "tweet" comprises the tweeted content (i.e., the message,

including any embedded photograph, video, or link), the user's account name (with a link to the

user's Twitter webpage), the user's profile picture, the date and time the tweet was generated,

and the number of times the tweet has been replied to (♡), retweeted by (⟲), or liked by (♡)

other users. Thus, a recent tweet from @realDonaldTrump looks like this:



24.     By default, Twitter webpages and their associated timelines are visible to everyone with internet access, including those who are not Twitter users. However, although non-users can view users' Twitter webpages, they cannot interact with users on the Twitter platform.

25.     <u>Following</u>. Twitter users can subscribe to other users' messages by "following" those users' accounts. Users see all tweets posted or retweeted by accounts they have followed. This display is labeled "Home" on Twitter's site, but it is often referred to as a user's "feed."

26.     <u>Verification</u>. Twitter permits users to establish accounts under their real names or pseudonyms. Users who want to establish that they are who they claim to be can ask Twitter to "verify" their accounts. When an account is verified, a blue badge with a checkmark appears next to the user's name on his or her Twitter page and on each tweet the user posts.

27.     <u>Retweeting</u>. Beyond publishing tweets to their followers, Twitter users can engage with one another in a variety of ways. For example, they can "retweet"—i.e., republish—the tweets of other users, either by publishing them directly to their own followers or by "quoting" them in their own tweets. When a user retweets a tweet, it appears on the user's timeline in the

8

same form as it did on the original user's timeline, but with a notation indicating that the post was retweeted. This is a recent retweet by @realDonaldTrump:



28.    <u>Replying</u>. A Twitter user can also reply to other users' tweets. Like any other tweet, a reply can be up to 140 characters in length and can include photographs, videos, and links. When a user replies to a tweet, the reply appears on the user's timeline under a tab labeled "Tweets & replies." The reply will also appear on the original user's feed in a "comment thread" under the tweet that prompted the reply. Other users' replies to the same tweet will appear in the same comment thread. Reply tweets by verified users, reply tweets by users with a large number of followers, and tweets that are "favorited" and retweeted by large numbers of users generally appear higher in the comment threads.

29.    <u>Comment threads</u>. A Twitter user can also reply to other replies. A user whose tweet generates replies will see the replies below his or her original tweet, with any replies-to-replies nested below the replies to which they respond. The collection of replies and replies-to-replies is sometimes referred to as a "comment thread." Twitter is called a "social" media

platform in large part because of comment threads, which reflect multiple overlapping conversations among and across groups of users. Below is a recent @realDonaldTrump tweet that prompted tens of thousands of comments:



30.     <u>Favoriting</u>. A Twitter user can also "favorite" or "like" another user's tweet by clicking on the heart icon that appears under the tweet. By "liking" a tweet, a user may mean to convey approval or to acknowledge of having seen the tweet.

31.     <u>Mentioning</u>. A Twitter user can also "mention" another user by including the other user's Twitter handle in a tweet. A Twitter user mentioned by another user will receive a "notification" that he or she has been mentioned in another user's tweet.

32.     Tweets, retweets, replies, likes, and mentions are controlled by the user who generates them. No other Twitter user can alter the content of any retweet or reply, either before or after it is posted. Twitter users cannot prescreen tweets, replies, likes, or mentions that reference their tweets or accounts.

33.     <u>Protected tweets</u>. Because all Twitter webpages are by default visible to all Twitter users and to anyone with access to the internet, users who wish to limit who can see and interact with their tweets must affirmatively "protect" their tweets. Other users who wish to view "protected" tweets must request access from the user who has protected her tweets. "Protected" tweets do not appear in third-party search engines, and they are searchable only on Twitter, and only by the user and her approved followers.

34.     <u>Blocking</u>. A user whose account is public (i.e. not protected) but who wants to make his or her tweets invisible to another user can do so by "blocking" that user. (Twitter provides users with the capability to block other users, but, importantly, it is the users themselves who decide whether to make use of this capability.) A user who blocks another user prevents the blocked user from interacting with the first user's account on the Twitter platform. A blocked user cannot see or reply to the blocking user's tweets, view the blocking user's list of followers or followed accounts, or use the Twitter platform to search for the blocking user's tweets. The

11

blocking user will not be notified if the blocked user mentions her; nor will the blocking user see any tweets posted by the blocked user.

35.     If the blocked user attempts to follow the blocking user, or to access the Twitter webpage from which the user is blocked, the user will see a message indicating that the other user has blocked him or her from following the account and viewing the tweets associated with the account. This is an example of a notification from Twitter that a user has been blocked:



**B.      The @realDonaldTrump account**

36.     Donald Trump established @realDonaldTrump in May 2009 and used the account for several years to engage with his followers about politics, celebrities, golf, and his business interests, among other topics. After his inauguration in January 2017, he began to use the account as an instrument of his presidency, and today he and his aides use it almost exclusively as a channel for communicating with the public about his administration. Because of the way he uses

the account, President Trump's tweets have become an important source of news and information about the government, and the comment threads associated with the tweets have become important forums for speech by, to, and about the President.

37.     President Trump presents the account to the public as one that he operates in his official capacity rather than his personal one. The Twitter page associated with the account is registered to Donald J. Trump, "45th President of the United States of America, Washington, D.C." The account bears a blue badge indicating that it has been verified by Twitter. On July 7, 2017, the header photograph showed an American flag. Over the past few weeks, the header photograph has shown images of President Trump performing his official duties, such as making a speech to the Department of Energy, flanked by Vice President Mike Pence and Secretary of Energy Rick Perry.

38.     The @realDonaldTrump account is accessible to the public at large without regard to political affiliation or any other limiting criteria. President Trump has not "protected" his tweets, and anyone who wants to follow the account can do so. He has not issued any rule or statement purporting to limit (by form or subject matter) the speech of those who reply to his tweets. The account has 33 million followers—14 million more than @POTUS and 19 million more than @WhiteHouse. The only users who cannot follow @realDonaldTrump are those whom the President and/or his aides have blocked.

39.     President Trump and his aides have made clear that they consider statements published on @realDonaldTrump to be official statements of the President. On July 2, 2017, President Trump tweeted from @realDonaldTrump, "My use of social media is not Presidential – it's MODERN DAY PRESIDENTIAL." A month earlier, White House Press Secretary Sean Spicer stated at a press conference that tweets from President Trump should be understood as

13

"official statements by the President of the United States." On June 23, 2017, the White House responded to a request from the House Permanent Select Committee on Intelligence for official White House records by referring the Committee to the President's "statement" made on Twitter on June 22, 2017. The White House social media director, Dan Scavino, promotes @realDonaldTrump, @POTUS, and @WhiteHouse equally as channels through which "President Donald J. Trump . . . communicat[es] directly with you, the American people!" The @WhiteHouse account's description directs Twitter users to "Follow for the latest from @POTUS @realDonaldTrump and his Administration." Further, tweets from @POTUS are frequently retweeted by @realDonaldTrump, and tweets from @realDonaldTrump are frequently retweeted by @POTUS.

40.     With the assistance of his aides, President Trump uses @realDonaldTrump, often multiple times a day, to announce, describe, and defend his policies; to promote his Administration's legislative agenda; to announce official decisions; to engage with foreign political leaders; to publicize state visits; and to challenge media organizations whose coverage of his Administration he believes to be unfair. President Trump sometimes uses the account to announce official decisions and policies before those decisions and policies are announced through other official channels. For example, the President used @realDonaldTrump to announce on June 7, 2017, for the first time, that he intended to nominate Christopher Wray for the position of FBI director. Likewise, on June 22, 2017, he used @realDonaldTrump to acknowledge for the first time that he did not possess tapes of conversations with former FBI Director James Comey.

41.     White House aides assist President Trump in operating the @realDonaldTrump account, including by drafting and posting tweets to the account. According to news reports,

President Trump also sometimes dictates tweets to White House Director of Social Media Dan Scavino, who then posts them on Twitter.

42.     Federal agencies and the federal courts treat President Trump's statements on @realDonaldTrump as official statements. The National Archives and Records Administration has advised the White House that the President's tweets from @realDonaldTrump, like those from @POTUS, are official records that must be preserved under the Presidential Records Act. The Ninth Circuit cited one of the President's tweets in striking down Executive Order 13,780, the order that temporarily suspends nationals of certain countries from entering the United States. *Hawaii v. Trump*, 859 F.3d 741, 773 n.14 (9th Cir. 2017), *cert. granted sub nom*. *Trump v. Int'l Refugee Assistance Project*, No. 16-1436, 2017 WL 2722580 (U.S. June 26, 2017). In citing the tweet, the Ninth Circuit observed that the White House Press Secretary had indicated that the President's tweets should be treated as official statements.

43.     Foreign leaders similarly treat President Trump's statements from @realDonaldTrump as reflective of his views and decisions as President. President Trump's tweets about London Mayor Sadiq Khan and the June 4, 2017 London Bridge terrorist attack ultimately resulted in the indefinite deferral of President Trump's planned state visit to Great Britain. A series of tweets from @realDonaldTrump endorsing the suspension of economic relations with Qatar, a longstanding ally of the United States, prompted a public response from the Qatari Foreign Minister. A series of tweets from @realDonaldTrump insisting that Mexico should pay for a wall along the U.S.–Mexico border caused the Mexican President Enrique Peña Nieto to cancel a previously planned meeting with President Trump shortly after his inauguration.

44.     Because of the way in which President Trump uses @realDonaldTrump, the account has become an important channel for news about the presidency and the U.S. government. Those who are blocked from the account are impeded in their ability to learn information that is shared only through that account.

45.     The comment threads associated with tweets from @realDonaldTrump are important forums for discussion and debate about the President, the President's decisions, and government policy. Typically, tweets from @realDonaldTrump generate thousands of replies, some of which generate hundreds or thousands of replies in turn. The @realDonaldTrump account is a kind of digital town hall in which the President and his aides use the tweet function to communicate news and information to the public, and members of the public use the reply function to respond to the President and his aides and exchange views with one another..

**C.      Defendants' blocking of Plaintiffs from the @realDonaldTrump account**

<u>The Individual Plaintiffs</u>

46.     The Individual Plaintiffs are Twitter users who have been blocked by one or more of the Defendants from the @realDonaldTrump account because they criticized the President or his policies. Defendants' blocking of the Individual Plaintiffs from the @realDonaldTrump account prevents or impedes the Individual Plaintiffs from viewing the President's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

47.     Defendants' viewpoint-based blocking of the Individual Plaintiffs from the @realDonaldTrump account infringes the Individual Plaintiffs' First Amendment rights. It imposes an unconstitutional restriction on their participation in a designated public forum. It imposes an unconstitutional restriction on their right to access statements that Defendants are

otherwise making available to the public at large. It also imposes an unconstitutional restriction on their right to petition the government for redress of grievances.

*Rebecca Buckwalter*

48.     Plaintiff Rebecca Buckwalter is a writer and legal analyst. Her writing on politics and law has been published by, among other outlets, the *Democracy Journal*, *CNN*, *NPR*, *The Atlantic*, and *Politico*. Ms. Buckwalter operates a verified Twitter account, @rpbp, which has approximately 5,247 followers.

49.     Ms. Buckwalter began following @realDonaldTrump after he became President. Before she was blocked, she monitored President Trump's tweets closely. She often responded to tweets from @realDonaldTrump, and she was an active participant in the comment threads. She would post links to her own writing when she believed pieces she had written were relevant to the topics being discussed. Some of her tweets directed at the @realDonaldTrump account received thousands of likes and retweets.

50.     One or more of the Defendants blocked Ms. Buckwalter from the @realDonaldTrump account on June 6, 2017. At 8:15 that morning, President Trump tweeted, "Sorry folks, but if I would have relied on the Fake News of CNN, NBC, ABC, CBS washpost or nytimes, I would have had ZERO chance winning WH." Ms. Buckwalter replied, "To be fair you didn't win the WH: Russia won it for you." Ms. Buckwalter's reply tweet received 9,033 likes and 3,371 retweets. Soon thereafter, Ms. Buckwalter discovered she had been blocked from the @realDonaldTrump account.

51.     Defendants' blocking of Ms. Buckwalter from the @realDonaldTrump account prevents or impedes her from viewing the President's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

*Philip Cohen*

52.     Plaintiff Philip Cohen is a Sociology Professor at the University of Maryland, College Park. He holds a PhD in Sociology from the University of Maryland and was formerly a Professor of Sociology at the University of North Carolina, Chapel Hill. He published a book in 2014 entitled *The Family: Diversity, Inequality and Social Change*. Professor Cohen operates a verified Twitter account, @familyunequal, which has approximately 9,900 followers.

53.     Professor Cohen began following @realDonaldTrump when Donald Trump announced his campaign for the presidency. Before he was blocked, Professor Cohen often responded to tweets from @realDonaldTrump, and he was an active participant in the comment threads.

54.     One or more of the Defendants blocked Professor Cohen from the @realDonaldTrump account on June 6, 2017. At 8:44 that evening, President Trump tweeted, "#ICYMI [In Case You Missed It] Announcement of Air Traffic Control Initiative… Watch" with a link to an announcement of his Air Traffic Control Initiative. Professor Cohen replied with a tweet showing a photograph of the President with these words superimposed on the photograph: "Corrupt Incompetent Authoritarian. And then there are the policies. Resist." Professor Cohen's tweet received 307 likes and 35 retweets. About 15 minutes later, Professor Cohen discovered he had been blocked from the @realDonaldTrump account.

55.     Defendants' blocking of Professor Cohen from the @realDonaldTrump account prevents or impedes him from viewing the President's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

*Holly Figueroa*

56.     Plaintiff Holly Figueroa is a national political organizer and songwriter who lives in Seattle, Washington. Ms. Figueroa operates a verified Twitter account, @AynRandPaulRyan, which has approximately 87,600 followers.

57.     Ms. Figueroa began following @realDonaldTrump soon after Donald Trump became President. She programmed her phone to alert her whenever the President tweets, and frequently responded to many of his tweets with critical remarks, caustic retorts, funny photos, and memes. Her replies to @realDonaldTrump have earned her a significant following on Twitter. Many of her tweets in reply to @realDonaldTrump receive thousands of likes and retweets, and they often appear at or near the top of the @realDonaldTrump comment threads.

58.     One or more of the Defendants blocked Ms. Figueroa from the @realDonaldTrump account on May 28, 2017. That morning, addressing the previous week's terrorist attack in Manchester, England, President Trump tweeted: "British Prime Minister May was very angry that the info the U.K. gave to the U.S. about Manchester was leaked. Gave me full details!" Ms. Figueroa replied to the President in a series of tweets, including one that contained an image of the Pope looking incredulously at President Trump, along with the statement "This is pretty much how the whole world sees you. #AMJoy #SundayMorning." Her reply received 15,000 likes and 5,300 retweets. Later that evening, she discovered that she had been blocked.

59.     Defendants' blocking of Ms. Figueroa from the @realDonaldTrump account prevents or impedes her from viewing the President's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads. Ms. Figueroa uses a third-party application to read and respond to the

President's tweets, but using the application is burdensome and the application is only partly effective.

*Eugene Gu*

60.     Plaintiff Eugene Gu is a resident in general surgery at Vanderbilt University Medical Center and the CEO of Ganogen Research Institute. Dr. Gu operates a Twitter account, @eugenegu, which has approximately 9,300 followers.

61.     Dr. Gu began following @realDonaldTrump in March 2017. He occasionally replied to tweets from @realDonaldTrump with critical and sometimes satirical remarks. Some of Dr. Gu's replies to @realDonaldTrump received thousands of likes and appeared on Twitter Moments, which are Twitter-created accounts of current events that incorporate popular tweets.

62.     One or more of the Defendants blocked Dr. Gu from the @realDonaldTrump account on June 18, 2017. At 4:02 AM that morning, President Trump tweeted: "The new Rasmussen Poll, one of the most accurate in the 2016 Election, just out with a Trump 50% Approval Rating. That's higher than O's #'s!" At 4:12 AM, Dr. Gu replied: "Covfefe: The same guy who doesn't proofread his Twitter handles the nuclear button." Dr. Gu's tweet received 2,900 likes and 239 retweets. Dr. Gu discovered he had been blocked from the @realDonaldTrump account approximately two hours later.

63.     Defendants' blocking of Dr. Gu from the @realDonaldTrump account prevents or impedes him from viewing the President's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

*Brandon Neely*

64.     Plaintiff Brandon Neely is a police officer in Houston, Texas. He is a veteran who served in Iraq in 2003 and worked as a guard at Guantanamo Bay in 2002. He operates a verified Twitter account, @BrandonTXNeely, which has approximately 6,700 followers.

65.     Mr. Neely began following the @realDonaldTrump account soon after Donald Trump announced his campaign for the presidency. After the election, Mr. Neely became a frequent critic of the President on Twitter, and some of his replies to @realDonaldTrump generated hundreds of likes and retweets. Some of Mr. Neely's tweets were cited on websites such as *The New Civil Rights Movement* and *The Daily Caller*. Mr. Neely's tweets often appeared near the top of the comment threads associated with tweets from @realDonaldTrump.

66.     One or more of the Defendants blocked Mr. Neely from the @realDonaldTrump account on June 12, 2017. That morning, President Trump tweeted: "Congratulations! First new Coal Mine of Trump Era Opens in Pennsylvania." He included a link to a *Fox News* article about the opening of the mine. Mr. Neely replied: "Congrats and now black lung won't be covered under #TrumpCare." The tweet received 3,334 likes and 341 retweets. Mr. Neely discovered that he had been blocked from the @realDonaldTrump account the following day.

67.     Defendants' blocking of Mr. Neely from the @realDonaldTrump account prevents or impedes him from viewing the President's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads. Mr. Neely has used a third-party application to read and respond to the President's tweets, but using the application is burdensome and the application is only partly effective.

*Joseph Papp*

68.     Plaintiff Joseph Papp is a former professional road cyclist and current anti-doping advocate, author, and speaker. He operates a verified Twitter account, @joepabike, which has approximately 11,600 followers.

69.     Mr. Papp monitors the @realDonaldTrump account closely and is an active participant in the comment threads. His replies to @realDonaldTrump have been featured or quoted in numerous media articles describing citizen response to President Trump, and some of them have been liked or retweeted thousands of times.

70.     One or more of the Defendants blocked Mr. Papp from the @realDonaldTrump account on or about June 3, 2017. At 12:35 on June 3, President Trump tweeted a video of his weekly presidential address with the hashtag "#WeeklyAddress." At 12:36 and 12:39, Mr. Papp replied to the President with a pair of linked tweets stating, "Greetings from Pittsburgh, Sir.," and "Why didn't you attend your #PittsburghNotParis rally in DC, Sir?" The second tweet received 335 likes and 34 retweets. On June 4, Mr. Papp discovered he had been blocked.

71.     Defendants' blocking of Mr. Papp from the @realDonaldTrump account prevents or impedes him from viewing the President's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

*Nick Pappas*

72.     Plaintiff Nick Pappas is a comic and writer. He operates a verified Twitter account, @Pappiness, which has approximately 37,400 followers.

73.     Mr. Pappas has followed the @realDonaldTrump account since 2016. Before he was blocked, Mr. Pappas' replies to @realDonaldTrump often received thousands of likes and retweets.

74.     One or more of the Defendants blocked Mr. Pappas from the @realDonaldTrump account on June 5, 2017. That morning, President Trump tweeted: "The Justice Dept. should ask for an expedited hearing of the watered down Travel Ban before the Supreme Court - & seek much tougher version!" and "In any event we are EXTREME VETTING people coming into the U.S. in order to keep our country safe. The courts are slow and political!" Mr. Pappas replied: "Trump is right. The government should protect the people. That's why the courts are protecting us from him." Mr. Pappas' tweet received 395 retweets and 1,181 likes. Mr. Pappas discovered that he had been blocked from the @realDonaldTrump account later that day.

75.     Defendants' blocking of Mr. Pappas from the @realDonaldTrump account prevents or impedes him from viewing the President's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

<u>Knight First Amendment Institute at Columbia University</u>

76.     Plaintiff Knight First Amendment Institute at Columbia University is a 501(c)(3) organization that works to defend and strengthen the freedoms of speech and the press in the digital age through strategic litigation, research, and public education. Staff at the Knight First Amendment Institute operate a Twitter account under the handle @knightcolumbia, and this account follows @realDonaldTrump.

77.     Unlike the Individual Plaintiffs, the Knight Institute has not been blocked from the @realDonaldTrump account. It can access the President's tweets on the same terms as other users, it can reply to the President directly, and it can participate fully in comment threads. The viewpoint-based exclusion of the Individual Plaintiffs from this forum, however, prevents the Knight Institute and other forum participants from hearing the speech that the Individual Plaintiffs would have engaged in had they not been blocked. Defendants' viewpoint-based

blocking of the Individual Plaintiffs violates the Knight Institute's First Amendment rights by distorting the expressive forum in which the Knight Institute and other non-blocked users participate.

## Cause of Action

### Violation of the First Amendment of the U.S. Constitution
### (Declaratory and Injunctive Relief)

78.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

79.     Defendants' blocking of the Individual Plaintiffs from the @realDonaldTrump account violates the First Amendment because it imposes a viewpoint-based restriction on the Individual Plaintiffs' participation in a public forum.

80.     Defendants' blocking of the Individual Plaintiffs from the @realDonaldTrump account violates the First Amendment because it imposes a viewpoint-based restriction on the Individual Plaintiffs' access to official statements the President otherwise makes available to the general public.

81.     Defendants' blocking of the Individual Plaintiffs from the @realDonaldTrump account violates the First Amendment because it imposes a viewpoint-based restriction on the Individual Plaintiffs' ability to petition the government for redress of grievances.

82.     Defendants' blocking of the Individual Plaintiffs from the @realDonaldTrump account violates the First Amendment because it imposes a viewpoint-based restriction on the Knight Institute's right to hear.

## Prayer For Relief

WHEREFORE, Plaintiffs request that this Court:

1.      Declare Defendants' viewpoint-based blocking of the Individual Plaintiffs from the @realDonaldTrump account to be unconstitutional;

2.      Enter an injunction requiring Defendants to unblock Individual Plaintiffs from the @realDonaldTrump account, and prohibiting Defendants from blocking the Individual Plaintiffs or others from the account on the basis of viewpoint;

3.      Award Plaintiffs their costs, including reasonable attorneys' fees, pursuant to 28 U.S.C. § 2412; and

4.      Grant any additional relief as may be just and proper.

Dated: July 11, 2017                          Respectfully submitted,

                                               /s/ Jameel Jaffer
                                              Jameel Jaffer (JJ-4653)
                                              Katherine Fallow (application for admission
                                                forthcoming)
                                              Alex Abdo (AA-0527)
                                              Knight First Amendment Institute
                                                at Columbia University
                                              314 Low Library
                                              535 West 116th Street
                                              New York, NY 10027
                                              (212) 854-9600
                                              jameel.jaffer@knightcolumbia.org
                                              katie.fallow@knightcolumbia.org
                                              alex.abdo@knightcolumbia.org

                                              Jessica Ring Amunson (*pro hac vice* motion
                                                forthcoming)
                                              Tassity S. Johnson (*pro hac vice* motion
                                                forthcoming)
                                              Jenner & Block LLP
                                              1099 New York Avenue, NW, Suite 900
                                              Washington, DC  20001
                                              (202) 639-6000
                                              jamunson@jenner.com
                                              tjohnson@jenner.com