

**U.S. Department of Justice**
Civil Division
Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C. 20530

---

Michael H. Baer   Tel:  (202) 305-8573
Trial Attorney    Fax: (202) 616-8460
                  Michael.H.Baer@usdoj.gov

**August 11, 2017**

**Via ECF and by Fax**

The Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Knight First Amendment Institute at Columbia University, et al. v. Trump, et al.*, **No. 17-cv-5205 (NRB)**

Dear Judge Buchwald:

      Defendants in the above-captioned matter submit this letter in response to Plaintiffs' August 8, 2017 request for a pre-motion conference, at which Plaintiffs would seek to file a motion for preliminary injunction. *See* Letter Mot., ECF No. 13. Plaintiffs seek preliminary relief for the unprecedented purpose of policing the manner in which President Donald J. Trump manages his Twitter account, @realDonaldTrump. The Court should not permit Plaintiffs to seek, much less obtain, such relief.[1]

      *First*, Plaintiffs cannot demonstrate a substantial likelihood of success on the merits of their First Amendment claim—the only claim at issue in this case. To obtain a preliminary injunction, Plaintiffs must make the heightened showing of a "'substantial' likelihood of success on the merits" because they "seek[] a preliminary injunction that [would] alter the status quo." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (citation omitted). Specifically, they seek to change the fact that they are "blocked" from the @realDonaldTrump account for "the pendency of this litigation." Letter Mot. at 2-3; Compl. ¶ 46.

      It would send the First Amendment deep into uncharted waters to hold that a president's choices about whom to follow, and whom to block, on Twitter—a privately run website that, as a central feature of its social-media platform, enables all users to block particular individuals from viewing posts—violate the Constitution. Extending the First Amendment's reach in that fashion would be particularly inappropriate in light of the Supreme Court's reluctance to apply traditional First Amendment restrictions, such as forum analysis, in inapposite contexts. *See United States v.*

---

[1] Defendants take no position on the scheduling of a pre-motion conference.

*Am. Library Ass'n, Inc.*, 539 U.S. 194, 205 (2003) (holding that First Amendment "forum analysis and heightened judicial scrutiny" were "out of place" in assessing a library's discretionary decisions about internet content). And, more broadly, such a novel holding would cast doubt on the ability of government officials to direct their communications to particular audiences.

Additionally, Plaintiffs are not likely to succeed on the merits because this Court does not have jurisdiction to redress Plaintiffs' alleged First Amendment injury. To do so would require an injunction ordering the President to "unblock" particular individuals—relief that this Court cannot award. As the Supreme Court acknowledged more than a century ago, courts lack jurisdiction "to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866). "The President's immunity from such judicial relief is 'a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history.'" *Franklin v. Massachusetts*, 505 U.S. 788, 827–28 (1992) (Scalia, J., concurring in part and concurring in the judgment) (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982)).

Injunctive relief is particularly inappropriate here because it would involve compelling the President to take an otherwise discretionary action. *See Mississippi*, 71 U.S. (4 Wall.) at 499-501 (contrasting "a mere ministerial duty, . . . which might be judicially enforced," with a discretionary or "purely executive and political" duty, which a court lacks jurisdiction to enforce). To the extent that the President's management of his Twitter account constitutes state action, it is unquestionably action that lies within his discretion as Chief Executive; it is therefore outside the scope of judicial enforcement. Without relief that would redress their alleged injury, Plaintiffs cannot succeed on the merits.

*Second,* Plaintiffs will not suffer irreparable harm if the Court allows this litigation to unfold in the normal course. As a threshold matter, there can be no irreparable harm if there is no First Amendment injury. *Hsu v. Roslyn Union Free Sch. Dist. No. 3*, 85 F.3d 839, 853 (2d Cir. 1996); *see also McNeilly v. Land*, 684 F.3d 611, 621 (6th Cir. 2012) ("Because McNeilly does not have a likelihood of success on the merits . . . his argument that he is irreparably harmed by the deprivation of his First Amendment rights also fails."). Additionally, Plaintiffs can continue to read all of the tweets from the @realDonaldTrump account—in real time—while this litigation pends. The @realDonaldTrump account is public, and it is therefore viewable by anyone who is not logged in to Twitter. *See Blocking accounts on Twitter*, Twitter, https://support.twitter.com/articles/117063# (last visited Aug. 11, 2017) (noting that if a blocked user "isn't logged in [to Twitter] or is accessing Twitter content via a third party, they may be able to see your public Tweets"). Finally, at least two plaintiffs still have the ability respond to the Presidents tweets, *see* Compl. ¶¶ 59, 67 (explaining that these plaintiffs use a third-party application to view and respond to the tweets), and the remaining plaintiffs remain free to use Twitter (or any other social media platform) to criticize the President. Accordingly, although "[t]he loss of First Amendment freedoms" generally "constitutes irreparable injury," this case is a far cry from *Elrod v. Burns*, where individuals faced discharge or threats of discharge "solely for the reason that they were not affiliated with or sponsored by the Democratic Party." 427 U.S. 347, 350, 373 (1976). No comparable injury is at issue here.

*Third,* the balance of the equities and the public interest tip decidedly against Plaintiffs. As noted above, any impairment of Plaintiffs' speech during this litigation is minimal. The fact that Plaintiffs have waited nearly a month since filing their complaint to request a preliminary injunction reinforces that conclusion. *Compare* Letter Mot. at 1 (dated Aug. 8, 2017), *with* Compl. at 25 (dated July 11, 2017). By contrast, imposing a preliminary injunction would raise profound separation-of-powers concerns by intruding directly into the President's chosen means of communicating to millions of Americans. *See Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996) ("[F]or the President to 'be ordered to perform particular executive . . . acts at the behest of the Judiciary' at best creates an unseemly appearance of constitutional tension and at worst risks a violation of the constitutional separation of powers." (citation omitted) (quoting *Franklin*, 505 U.S. at 827 (Scalia, J., concurring in part and concurring in the judgment)). Even if this Court ultimately were to entertain the possibility of such relief, it should not do so in the expedited posture of a motion for preliminary injunction.

For the foregoing reasons, Defendants respectfully submit that the Court should not permit Plaintiffs to seek a preliminary injunction.

    Respectfully submitted,

    CHAD A. READLER
    Acting Assistant Attorney General

    ERIC R. WOMACK
    Assistant Branch Director

By:    */s/ Michael H. Baer*
    MICHAEL H. BAER
    Trial Attorney
    U.S. Department of Justice,
    Civil Division, Federal Programs Branch
    20 Massachusetts Avenue, NW
    Washington, DC 20530
    Telephone:    (202) 305-8573
    Facsimile:    (202) 616-8460
    E-mail: Michael.H.Baer@usdoj.gov

*Counsel for Defendants*