IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY; REBECCA BUCKWALTER; PHILIP COHEN; HOLLY FIGUEROA; EUGENE GU; BRANDON NEELY; JOSEPH PAPP; and NICHOLAS PAPPAS,<br><br>                Plaintiffs,<br><br>       v.<br><br>DONALD J. TRUMP, President of the United States; HOPE HICKS, White House Acting Communications Director; SARAH HUCKABEE SANDERS, White House Press Secretary; and DANIEL SCAVINO, White House Director of Social Media and Assistant to the President,<br><br>                Defendants. | No. 1:17-cv-5205 (NRB)<br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

Jessica Ring Amunson (*pro hac vice*)
Tassity S. Johnson (*pro hac vice*)
Jenner & Block LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com

Jameel Jaffer (JJ-4653)
Katherine Fallow (KF-2535)
Carrie DeCell (application for admission
   forthcoming)
Alex Abdo (AA-0527)
Knight First Amendment Institute at Columbia
   University
206 Kent Hall
1140 Amsterdam Avenue
(212) 854-9600
jameel.jaffer@knightcolumbia.org

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.     Defendants' blocking of the Individual Plaintiffs from the @realDonaldTrump account violates the First Amendment....................................................................2

         A.     Defendants' use of the @realDonaldTrump account is state action. ................ 2

         B.     The @realDonaldTrump account is a designated public forum, and Defendants' viewpoint-based blocking of the Individual Plaintiffs from that forum violates the First Amendment.................................................. 4

              1.     The @realDonaldTrump account is a designated public forum. .......... 4

              2.     The @realDonaldTrump account is not government speech. ............... 5

              3.     Defendants' viewpoint-based blocking of the Individual Plaintiffs from the @realDonaldTrump account unconstitutionally excludes them from a designated public forum. ........................................................................................................ 6

         C.     Defendants are violating the First Amendment by restricting the Individual Plaintiffs' access to generally available government information based on their viewpoints............................................................. 7

         D.     Defendants' viewpoint-based blocking violates the Individual Plaintiffs' right to petition................................................................................. 8

    II.    The Court can remedy Defendants' ongoing violation of Plaintiffs' First Amendment rights.........................................................................................................9

         A.     The Court has authority to grant relief against the President........................... 9

         B.     The Court has authority to grant relief against the President's aides. ............ 14

CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Am. Broad. Cos. v. Cuomo*, 570 F.2d 1080 (2d Cir. 1977) .............................................................. 4

*Baker v. Carr*, 369 U.S. 186 (1962) ............................................................................................... 12

*Bensayah v. Obama*, 610 F.3d 718 (D.C. Cir. 2010) ..................................................................... 10

*Boumediene v. Bush*, 553 U.S. 723 (2008) .................................................................................... 10

*Boumediene v. Bush*, 579 F. Supp. 2d 191 (D.D.C. 2008) ............................................................ 10

*Cable News Network, Inc. v. Am. Broad. Cos., Inc.*, 518 F. Supp. 1238 (N.D. Ga. 1981) ............................................................................................................................ 10

*Clinton v. Jones*, 520 U.S. 681 (1997) ...................................................................................... 9, 10

*Clinton v. New York*, 524 U.S. 417 (1998) .............................................................................. 10, 13

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985) ................................... 4

*Davison v. Loudoun Cty. Bd. of Supervisors*, No. 1:16CV932, 2017 WL 3158389 (E.D. Va. July 25, 2017) .......................................................................................................... 4

*Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727 (1996) .......................... 4

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002) ......................................................................................................................................... 8

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ................................................................... 12, 14

*Freedom from Religion Found., Inc. v. Obama*, 691 F. Supp. 2d 890 (W.D. Wis. 2010) ........................................................................................................................................ 10

*Gaines v. Thompson*, 74 U.S. (7 Wall.) 347 (1868) ................................................................ 12, 13

*Glass v. Coughlin*, No. 91 Civ. 0193, 1991 WL 102619 (S.D.N.Y. May 29, 1991) .................... 14

*Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554 (4th Cir.) ............................................ 10

*Johnson v. Perry*, 859 F.3d 156 (2d Cir. 2017) .............................................................................. 4

*Leathers v. Medlock*, 499 U.S. 439 (1991) ..................................................................................... 8

*Mackie v. Bush*, 809 F. Supp. 144 (D.D.C. 1993) ........................................................................ 10

*Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133 (2d Cir. 2004) ........................................ 6

*Marbury v. Madison*, 5 U.S. 137 (1803) .................................................................................. 14

*Matal v. Tam*, 137 S. Ct. 1744 (2017) ...................................................................................... 6

*McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977) ............................................................ 14

*Mirabella v. Villard*, 853 F.3d 641 (3d Cir. 2017) .................................................................. 8

*Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475 (1866) ..................................................... 12, 13

*Monsky v. Moraghan*, 127 F.3d 243 (2d Cir. 1997) ................................................................ 3

*Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974) .............................. 11, 13

*Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973) .................................................................... 10

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) ......................................................... 8

*Pitchell v. Callan*, 13 F.3d 545 (2d Cir. 1994) ....................................................................... 3

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995) ............................... 6

*Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) ........................................................... 4

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105 (1991) .................................................................................................................................. 7

*Sneaker Circus v. Carter*, 457 F. Supp. 771 (E.D.N.Y. 1978) .............................................. 10

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) .............................................................. 13, 14

*U.S. Postal Serv. v. Hustler Magazine, Inc.*, 630 F. Supp. 867 (D.D.C. 1986) ...................... 8

*United States v. Burr*, 25 F. Cas. 187 (C.C.D. Va. 1807) (No. 14,694) ............................. 9, 11

*United States v. Giordano*, 442 F.3d 30 (2d Cir. 2006) .......................................................... 3

*United States v. Lee*, 106 U.S. 196 (1882) .............................................................................. 9

*United States v. Nixon*, 418 U.S. 683 (1974) ................................................................ 9, 11, 12

*United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803 (2000) .......................................... 7

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ..................................... 9, 11, 14

**Other Authorities**

Laura Krugman Ray, *From Prerogative to Accountability: The Amenability of the President to Suit*, 80 Ky. L.J. 739 (1992) ............................................................................ 10, 11

**INTRODUCTION**

The President and his aides use the President's Twitter account, @realDonaldTrump, as a digital town hall, with the President speaking from a virtual podium and citizens responding to him and engaging with one another through the account's comment threads. The account is a designated public forum, and accordingly Defendants' viewpoint-based blocking of the Individual Plaintiffs from it is unconstitutional. Defendants' ongoing conduct also violates the Individual Plaintiffs' right to access generally available government information, as well as their right to petition the government for redress of grievances.

Defendants' opposition brief consists almost entirely of arguments that Plaintiffs addressed in their opening brief. Defendants continue to assert that their use of the @realDonaldTrump account is not state action because the account was created by the President before he took office. But, as Plaintiffs have already explained, the appropriate analysis is functional rather than formalistic, and the crucial question is how the account is used. Here, Defendants' own admissions establish that Defendants use the @realDonaldTrump account as an instrument of governance. Consequently, Defendants' operation of the @realDonaldTrump account is state action.

Defendants also reiterate their argument that the President's "decisions about whom to engage with" on Twitter are nothing more than government speech, Gov't Opp'n Br. 1,[1] and that accordingly the public forum doctrine does not apply here. Like Defendants' state action

---

[1] Plaintiffs use the following abbreviations in this memorandum: Joint Stipulation ("Stip."), ECF No. 30-1; Pls.' Cross-Mot. for Summ. J. and Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Br."), ECF No. 43; Br. of *Amici Curiae* First Amend. Legal Scholars ("First Amend. Br."), ECF No. 47; Br. of *Amicus Curiae* Elec. Frontier Found. ("EFF Br."), ECF No. 49; Br. of Fed. Courts Scholars as *Amici Curiae* ("Fed. Cts. Br."), ECF No. 51; and Defs.' Mem. in Opp'n to Pls.' Cross-Mot. for Summ. J. and Reply Mem. in Supp. of Defs.' Mot. for Summ. J. ("Gov't Opp'n Br."), ECF No. 54.

argument, this contention ignores how the @realDonaldTrump account is actually used. The record shows that Defendants use the account not only to publish important information about the presidency, but also to invite speech by ordinary citizens about the President and his administration's policies. Indeed, interactivity is one of Twitter's defining features. That the @realDonaldTrump account includes the President's own speech does not make it something other than a public forum. Town halls and school board meetings—quintessential designated public forums—also include government speech.

Defendants' argument that the Court lacks authority to remedy Plaintiffs' injuries is meritless, too. The courts have the authority to review the legality of the President's official actions and to grant relief when he acts unlawfully—indeed, this authority is fundamental to a society governed by the rule of law. Here, the Court can also provide relief by enjoining the President's aides, including Defendant Daniel Scavino, who has the "access necessary to block and unblock individuals from the @realDonaldTrump account." Stip. ¶ 12.

## ARGUMENT

**I.     Defendants' blocking of the Individual Plaintiffs from the @realDonaldTrump account violates the First Amendment.**

**A.     Defendants' use of the @realDonaldTrump account is state action.**

Defendants operate the @realDonaldTrump account as an extension of the White House and a tool of governance. Pls.' Br. 12–17. As Defendants have conceded, the @realDonaldTrump home page indicates that the account belongs to the President, and it shows images of him performing official duties. The vast majority of the tweets from the account concern official decisions and policies, and the White House regularly uses the account to announce major policy decisions. It is undisputed that Defendant Scavino and other White House staff participate in the account's management, including by drafting and posting tweets. The

President and his aides frequently refer to the account as a source of official statements of the President, and federal courts and agencies have treated @realDonaldTrump tweets accordingly. Two weeks ago, the Department of Justice filed a brief acknowledging that "[t]he government is treating" certain tweets from @realDonaldTrump "as official statements of the President of the United States." Defs.' Suppl. Submission 2, *James Madison Project v. Dep't of Justice*, No. 1:17-cv-00144 (D.D.C. filed Nov. 13, 2017), ECF No. 29.

This Court should reject Defendants' argument that the @realDonaldTrump account is not subject to the First Amendment because it was established as a "personal" account before the President took office. The Second Circuit has made clear that the state action analysis should be a functional one that looks to the nature of the act being performed, not simply to whether the officer is on or off duty or using private or government property. *See Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997); *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994); *see also United States v. Giordano*, 442 F.3d 30, 43 (2d Cir. 2006) (Sotomayor, J.). Thus, the fact that the account was created before President Trump's inauguration is not determinative. *See Giordano*, 442 F.3d at 43 (rejecting defendant's argument that "he cannot have acted under color of law because his actions, although they took place during his mayoralty, 'were clearly a part of and derived from [a] personal relationship' . . . that was unrelated to and predated his mayoralty").

The Court should also reject Defendants' invitation to consider the act of blocking in isolation—and as a manifestation of personal pique rather than an exercise of state power. Gov't Opp'n Br. 10–11. Defendants' ongoing blocking of the Individual Plaintiffs from the @realDonaldTrump account is "an exercise of the executive power," Gov't Opp'n Br. 1, because it has the effect of excluding the Individual Plaintiffs from a public forum. In precisely the same way, an official presiding over a town hall would be exercising state action if she descended

3

from the dais to personally eject a critic from the hall. In any event, even if Defendants were justified in focusing solely on the act of blocking, and in ignoring the nature of the forum, the record makes clear that the Individual Plaintiffs were blocked after they expressed critical opinions in response to the President's tweets about official matters. The blocking therefore constitutes state action even under Defendants' theory.[2]

> **B.     The @realDonaldTrump account is a designated public forum, and Defendants' viewpoint-based blocking of the Individual Plaintiffs from that forum violates the First Amendment.**
>
> **1.     The @realDonaldTrump account is a designated public forum.**

Defendants created a designated public forum for speech by choosing to use an inherently interactive platform to communicate with the public without restricting who may enter the conversation or what topics they may discuss. Pls.' Br. 17–19. Defendants' argument that a public forum can never be created using private facilities (like a Twitter account) is wrong as a matter of law. *See, e.g.*, *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555 (1975); *Am. Broad. Cos. v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir. 1977); *Davison v. Loudoun Cty. Bd. of Supervisors*, No. 1:16CV932, 2017 WL 3158389, at *10 (E.D. Va. July 25, 2017); *see also Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 792 (1996) (Kennedy, J., concurring in part) (public fora are not "limited to property owned by the government"); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985) (noting that public forum analysis applies to "public property or to private property dedicated to public use"); *cf. Johnson v. Perry*, 859 F.3d 156, 177 (2d Cir. 2017) (rejecting high school principal's defense that the

---

[2] Defendants' argument that a finding of state action in these circumstances will impose a "sweeping rule that brings private conduct within the scope of state action," Gov't Opp'n Br. 12, is baseless. Plaintiffs do not dispute the proposition that public officials may use office phones for personal purposes, or that public officials may maintain personal Twitter accounts. But where, as here, the official uses a nominally personal Twitter account overwhelmingly for official purposes, that general use—and the blocking in particular—constitutes state action.

First Amendment did not apply to his viewpoint-based expulsion of parent from basketball game held at private sports arena). Defendants have not even engaged this substantial body of precedent.

### 2. The @realDonaldTrump account is not government speech.

Defendants devote much of their brief to arguing that the @realDonaldTrump account is solely government speech and thus not subject to public forum analysis, Gov't Opp'n Br. 13–23, but that argument, too, is baseless. It misses the crucial fact that interactivity is a defining feature of the Twitter platform and that the comment threads in which individuals respond to the President and to one another are integral to the @realDonaldTrump account. No one would mistake the statements in the comment threads for government speech, and the fact that a forum *includes* government speech does not mean that it is something other than a public forum. Pls.' Br. 20. Defendants point out that they did not design the Twitter platform, but this is irrelevant. The important point is that they chose to use an interactive platform that invites speech by the public at large, and in so doing they purposefully opened a forum to speech by the public. (Notably, Defendants also make frequent use of Twitter's interactive features by replying to and retweeting the tweets of the President's supporters. *E.g.*, Stip. Ex. A. at 3–4, 9, 13, 20.)

For related reasons, Defendants are also wrong to analogize their conduct here to a public official declining to engage with a critic in a public park or on the street. Gov't Opp'n Br. 13–14. The President's blocking of the Individual Plaintiffs is not akin to the President turning away from critics during a stroll in a park. Rather, it is akin to the President ejecting dissenting speakers from a park in which he is conducting an official meeting that he has opened up to the

5

public at large.³ Plainly, the First Amendment does not prohibit the President or other public officials from arranging private meetings with people whose views they favor, and from excluding those whose views they disfavor. But, for reasons the Supreme Court and Second Circuit have described repeatedly, the First Amendment imposes constraints on government actors' authority to exclude individuals from public forums.

### 3. Defendants' viewpoint-based blocking of the Individual Plaintiffs from the @realDonaldTrump account unconstitutionally excludes them from a designated public forum.

Defendants' blocking of the Individual Plaintiffs from the @realDonaldTrump account because of their expressed views on the President's policies is the most egregious form of First Amendment speech violation—one that is impermissible in any type of forum. *See, e.g.*, *Matal v. Tam*, 137 S. Ct. 1744, 1765 (2017); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 143 (2d Cir. 2004).

Having no basis to argue that Defendants are justified in blocking individual citizens from a public forum based on their political views, Defendants argue instead that Plaintiffs have not suffered real harm. But Defendants have conceded that the blocking impedes the Individual Plaintiffs from accessing and responding to tweets from @realDonaldTrump, and from participating fully in the associated comment threads, without the use of burdensome and time-consuming workarounds. Stip. ¶¶ 56, 58–60; *see also* First Amend. Br. 15–16 (detailing four "particularly acute" harms to Individual Plaintiffs' speech rights in the context of the interactive and "real-time" nature of speech on Twitter). Defendants' ongoing conduct thus burdens the

---

³ Defendants' analogy might be more apt if Defendants had "muted" the Individual Plaintiffs rather than blocked them. *See Muting Accounts on Twitter*, Twitter, https://support.twitter.com/articles/20171399. If Defendants had muted the Individual Plaintiffs, they would have spared the President from having to encounter the Individual Plaintiffs' responses and criticisms, but they would not have impeded the Individual Plaintiffs from accessing the President's tweets or engaging with others in the associated comment threads.

6

Individual Plaintiffs' free speech rights on the basis of viewpoint, in violation of the First Amendment.

### C. Defendants are violating the First Amendment by restricting the Individual Plaintiffs' access to generally available government information based on their viewpoints.

Defendants' blocking of the Individual Plaintiffs also imposes an unconstitutional viewpoint-based burden on the Individual Plaintiffs' ability to access generally available government information. Although Defendants are not required to make the @realDonaldTrump account accessible to the public at large, having done so, Defendants cannot constitutionally restrict the Individual Plaintiffs from accessing those statements simply because the President disagrees with their views.

Defendants argue that there is no First Amendment violation here because the Individual Plaintiffs, despite having been blocked from the @realDonaldTrump account, can still access the President's tweets. Defendants are correct that the Individual Plaintiffs have not been precluded altogether from accessing the President's tweets. They can access the tweets by logging out of Twitter and visiting the President's public Twitter page. Many of the President's tweets are also published in the newspapers. But Plaintiffs' complaint is not that the Individual Plaintiffs have been denied access altogether, but that Defendants have burdened their access to the President's tweets simply because they criticized the President or his views. The Supreme Court has emphasized that laws burdening speech based on content or viewpoint are as suspect as laws banning speech outright on these grounds, because both types of government action create the danger that the government is impermissibly favoring certain ideas in the realm of public discourse. *See, e.g.*, *United States v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 812 (2000); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991); *Leathers*

7

*v. Medlock*, 499 U.S. 439, 448 (1991). No conceivable legitimate government interest could justify burdening the Individual Plaintiffs' ability to read tweets from the @realDonaldTrump account—a crucial source of information about the presidency, by Defendants' own account—simply because the President is unhappy with their criticism of him.

**D. Defendants' viewpoint-based blocking violates the Individual Plaintiffs' right to petition.**

The Petition Clause guarantees individuals' right to speak *to* the President through available communication channels. *See Mirabella v. Villard*, 853 F.3d 641 (3d Cir. 2017); *U.S. Postal Serv. v. Hustler Magazine, Inc.*, 630 F. Supp. 867, 874 (D.D.C. 1986). As the Supreme Court observed last Term, a public official's Twitter account serves as a particularly effective channel for petition activity. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017) ("[O]n Twitter, users can petition their elected representatives and otherwise engage with them in a direct manner."). Defendants' principle response to this argument is to insist that that the Individual Plaintiffs can still speak *about* the President in channels not directed to his attention. Defendants also argue that the President is not required to read or respond to every constituent communication no matter what form it takes. Gov't Opp'n Br. 25. Neither of these arguments is persuasive. Plainly, the ability to speak *to* the President and the ability to speak *about* the President are very different things, and the second is not a substitute for the first. And while Defendants are obviously correct that the President is not required to listen carefully to every constituent, let alone respond to every constituent, the First Amendment precludes the President from opening a channel for petitions and then closing it only to those whose views he dislikes. *Mirabella*, 853 F.3d at 649–50; *Hustler*, 630 F. Supp. at 871 ("[E]lected representatives of the people . . . cannot simply shield themselves from undesirable mail in the same manner as an ordinary addressee."); *cf. Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d

8

83, 91–92 (2d Cir. 2002) (holding plaintiff had adequately pleaded unconstitutional retaliation for petition activity).

## II. The Court can remedy Defendants' ongoing violation of Plaintiffs' First Amendment rights.

The Court has the authority to remedy the injuries Plaintiffs have complained of here. *See United States v. Lee*, 106 U.S. 196, 220 (1882) ("All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it."). Defendants argue that their conduct is beyond the reach of the Court even if that conduct is unconstitutional, but the cases they rely on do not support this dangerous proposition. To the contrary, the courts have issued equitable relief against the President himself in many different contexts involving executive interests far weightier than those at issue here. The Court also has the authority to enjoin the President's aides, including Defendant Scavino, who has the acknowledged ability to block and unblock individuals from the @realDonaldTrump account.

### A. The Court has authority to grant relief against the President.

"The Court has the authority to determine whether [the President] has acted within the law." *Clinton v. Jones*, 520 U.S. 681, 703 (1997); Pls.' Br. 27–31. Courts have exercised this authority—including by issuing equitable relief against the President—in a wide variety of contexts, many of which implicated much more significant executive interests than any Defendants can plausibly assert in this one. The Supreme Court enjoined President Truman's seizure of the nation's steel mills despite his conclusion that the seizure was necessary to avert a national emergency. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). It affirmed a subpoena for confidential White House records in the President's personal possession for use as evidence in a criminal prosecution implicating the President himself. *United States v. Nixon*, 418 U.S. 683 (1974); *see also United States v. Burr*, 25 F. Cas. 187 (C.C.D. Va. 1807) (No. 14,694).

9

It affirmed the power of the courts to order the President to release prisoners held as enemy combatants. *Boumediene v. Bush*, 553 U.S. 723, 771 (2008).[4] And it affirmed a declaration invalidating the President's exercise of the line item veto. *Clinton v. New York*, 524 U.S. 417, 425 n.9, 449 (1998). Following the Supreme Court's lead, lower courts routinely conclude that they have the authority to issue injunctive and declaratory relief against the President for his official acts.[5]

Defendants attempt to distinguish *Youngstown* on the ground that it involved injunctive relief "directed at the President's subordinates" and not against the President himself, Gov't Opp'n Br. 4, but courts have rejected this reading. *See, e.g.*, *Jones*, 520 U.S. at 703; *Nixon v. Sirica*, 487 F.2d 700, 709 (D.C. Cir. 1973); *Sneaker Circus v. Carter*, 457 F. Supp. 771, 782 (E.D.N.Y. 1978); *see also* Fed. Cts. Br. 8–9. Indeed, each of the seven opinions in *Youngstown*

---

[4] On remand, the district court denied a motion to dismiss the President as an "improper respondent" pursuant to the same authorities Defendants cite in the instant case, *see* Gov't Mot. to Dismiss Improper Resp'ts, *Boumediene v. Bush,* 04-cv-01166 (D.D.C. Aug. 12, 2008), 2008 WL 5262160; Minute Order, *Boumediene v. Bush,* 04-cv-01166 (D.D.C. Nov. 10, 2008) (denying motion), and proceeded to grant habeas relief for five petitioners against respondents, including the President, *Boumediene v. Bush*, 579 F. Supp. 2d 191 (D.D.C. 2008); *see Bensayah v. Obama*, 610 F.3d 718 (D.C. Cir. 2010) (reversing denial of remaining petition on appeal).

[5] *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 587 (4th Cir.) (enjoining enforcement of President's executive order and observing that "the Supreme Court . . . has not countenanced judicial abdication, especially where constitutional rights, values, and principles are at stake"), *cert. granted*, 137 S. Ct. 2080 (2017), *and vacated and remanded on other grounds*, No. 16-1436, 2017 WL 4518553 (U.S. Oct. 10, 2017); *Freedom from Religion Found., Inc. v. Obama*, 691 F. Supp. 2d 890, 908 (W.D. Wis. 2010) ("Defendants are . . . wrong to suggest that the President is immune from injunctive or declaratory relief."), *vacated on other grounds*, 641 F.3d 803 (7th Cir. 2011); *Mackie v. Bush*, 809 F. Supp. 144, 146 (D.D.C. 1993) (preliminarily enjoining President from removing plaintiffs from government office), *vacated on mootness grounds sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993); *Cable News Network, Inc. v. Am. Broad. Cos., Inc.*, 518 F. Supp. 1238, 1245 (N.D. Ga. 1981) (preliminarily enjoining President "from totally excluding television news representatives from participating in pool coverage of Presidential activities and White House events"); *Sneaker Circus v. Carter*, 457 F. Supp. 771, 782 (E.D.N.Y. 1978) (concluding that "doctrine of executive immunity" did not bar suit for declaratory and injunctive relief against the President); *see generally* Fed. Cts. Br. 12–13; Laura Krugman Ray, *From Prerogative to Accountability: The Amenability of the President to Suit*, 80 Ky. L.J. 739, 786–809 (1992) (surveying cases).

framed the case as one testing the constitutionality of an order issued by the President. 343 U.S. at 582 (reviewing the "President's order . . . direct[ing] that a presidential policy be executed in a manner prescribed by the President").[6] While the Court ultimately directed its injunction to the Secretary of Commerce, the notion that the *Youngstown* injunction did not equally constrain the President "exalt[s] form over substance." *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 613 (D.C. Cir. 1974) ("[I]t would be exalting form over substance if the President's acts were held to be beyond the reach of judicial scrutiny when he himself is the defendant, but held within judicial control when he and/or the Congress has delegated the performance of duties to federal officials subordinate to the President and one or more of them can be named as a defendant.").

Defendants attempt to distinguish the Supreme Court's decisions in *United States v. Nixon*, 418 U.S. 683, and *United States v. Burr*, 25 F. Cas. 187, on the ground that those cases involved subpoenas. Gov't Opp'n Br. 4. Defendants fail to explain, however, why subpoenas compelling the President to produce records should be considered less offensive to executive prerogatives than an injunction compelling the President to unblock individuals from his Twitter account. In *United States v. Nixon*, the Supreme Court affirmed a subpoena requiring President Nixon to turn over tapes capturing confidential conversations between the President and his aides

---

[6] *See Youngstown*, 343 U.S. at 638 (Jackson, J., concurring) (characterizing order as a "Presidential claim to power at once so conclusive and preclusive" that it "must be scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system"); *id.* at 655 (Burton, J., concurring) (reviewing the "validity of the President's order of seizure"); *id.* at 661–62 (Clark, J., concurring) (invalidating the President's seizure order as beyond "the limits of presidential power"); *id.* at 632 (Douglas, J., concurring) (refusing to "sanction[] the present exercise of power by the President"); *id.* at 614 (Frankfurter, J., concurring) (exercising his "judicial duty to find that the President ha[d] exceeded his powers"); *id.* at 709 (Vinson, J., dissenting) (insisting that "[a] sturdy judiciary . . . must independently determine for itself whether the President was acting . . . as required by the Constitution"); *see also* Ray, *From Prerogative to Accountability*, 80 Ky. L.J. at 762 ("The language of all the opinions makes clear that the Justices viewed the case as one of presidential rather than delegated authority; Charles Sawyer, the named defendant, was very much the forgotten man.").

at the White House. 418 U.S. at 686. It did so in the context of a criminal case in which the President himself was named as an unindicted co-conspirator. *Id.* at 687. The notion that the judiciary has authority to order the President to disclose his confidential White House conversations but not to order him to unblock individuals from his public Twitter account is nonsensical.

Defendants rely, finally, on *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475 (1866), but this case does not stand for the proposition that the President is beyond the reach of the Court, as they seem to suggest. Gov't Opp'n Br. 3. *Mississippi* is best understood as "an early application of the political question doctrine," which prohibits judicial resolution of issues committed exclusively to the political branches. Fed. Cts. Br. 4; *Mississippi*, 71 U.S. at 498–99 (considering "single point" of whether the Court could enjoin the President from enforcing acts of Congress and concluding that duty to execute the laws was "purely executive and political" and therefore not subject to "judicial interference"). This is how the Supreme Court itself understood the case in *Gaines v. Thompson*, 74 U.S. (7 Wall.) 347, 353 (1868) (invoking *Mississippi* under "general doctrine" that courts may not interfere in any public officer's exercise of "public duties . . . confided" to him "by law"); *see* Fed. Cts. Br. 5, and in *Baker v. Carr*, 369 U.S. 186, 224–26 & n.52 (1962) (reviewing *Mississippi* among "precedents as to what constitutes a nonjusticiable 'political question'").[7]

---

[7] Defendants claim to find support for their sweeping reading of *Mississippi* in Justice O'Connor's plurality opinion in *Franklin v. Massachusetts*, 505 U.S. 788 (1992). But Justice O'Connor's language was dicta, and in any event her analysis turned ultimately on considerations of judicial prudence, not judicial power. *Id.* at 803 (plurality) (concluding that the Court "need not decide whether injunctive relief against the President was appropriate"). Moreover, four Justices who did not join Justice O'Connor's plurality opinion did not question plaintiff's standing to seek relief against the President. *See id.* at 807–23 (Stevens, J., concurring).

Even if Defendants were correct that *Mississippi* must be understood to mean that the courts cannot enjoin the President except as to "ministerial" duties, the duty at issue here—unblocking individuals from a social media account—is ministerial in the relevant sense of the word, and a far cry from the "purely executive and political" duties to enforce the Reconstruction Acts as President and Commander-in-Chief at issue in *Mississippi*. 71 U.S. at 499 (considering President's duty to ensure that acts were "faithfully executed" by assigning generals to command in the South, affording them adequate military resources, and supervising them "as commander-in-chief"); *cf. Gaines*, 74 U.S. at 353 (contrasting ministerial duties with questions "requir[ing] the careful consideration and construction of more than one act of Congress"). Defendants suggest that Plaintiffs are asking the Court to "instruct" the President "on how to perform his official duties on a day-to-day basis," Gov't Opp'n Br. 5, but this is inaccurate. Plaintiffs ask the Court to order the President to take a single action—unblock the Individual Plaintiffs—consistent with "a simple, definite duty" not to censor his constituents on the basis of their viewpoints, a duty that "aris[es] under conditions admitted or proved to exist, and imposed by law." *Mississippi*, 71 U.S. at 498; *cf. Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996) (holding that President's duty to comply with statutory removal restrictions was "ministerial . . ., for the President is bound to abide by the requirements of duly enacted and otherwise constitutional statutes").[8]

---

[8] The Court can issue declaratory relief against the President even if it declines, as a prudential matter, to issue injunctive relief. *Nat'l Treasury Emps. Union*, 492 F.2d at 616 (concluding that court had jurisdiction to issue writ of mandamus against the President but "opt[ing] instead" to issue declaration); *see Clinton*, 524 U.S. 417 (declaring President's line item veto unconstitutional).

### B. The Court has authority to grant relief against the President's aides.

In any event, the Court could remedy Plaintiffs' injuries here by issuing equitable relief against the President's aides. *See* Pls.' Br. 32–33; *see, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (plurality); *Youngstown*, 343 U.S. at 582, 589. Notably, in *Swan v. Clinton*, the court granted injunctive relief against subordinate executive officials even though they bore no responsibility for Swan's injury; some of them were not named in the complaint; the relief they could provide was partial; and the President still "ha[d] the power, if he so chose, to undercut this relief." 100 F.3d at 979–80. As in *Franklin*, *Youngstown*, and *Swan*, the Court is entitled to presume, in the absence of a clear statement to the contrary, that the President would respect a judicial order relating to the constitutionality of his actions even if the order were formally directed to his aides. *Cf. Marbury v. Madison*, 5 U.S. 137, 171 (1803) (remarking that it is "never presumed" that the President will act unlawfully).

Defendants are likewise wrong to contend that the Court cannot enjoin White House officials who did not personally block the Individual Plaintiffs. Gov't Opp'n Br. 7. Plaintiffs have sued Defendants in their official capacities, and accordingly Plaintiffs' entitlement to relief against them does not turn on their personal complicity in the unconstitutional conduct. *Glass v. Coughlin*, No. 91 Civ. 0193, 1991 WL 102619, at *2 (S.D.N.Y. May 29, 1991) ("[P]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief," as opposed to damages, for constitutional violations); *McKinnon v. Patterson*, 568 F.2d 930, 934 & n.4 (2d Cir. 1977). Defendant Scavino, at least, is involved in administering, maintaining, and using the @realDonaldTrump account, and is therefore involved in the ongoing blocking of the Individual Plaintiffs. He has the access and ability necessary to block and unblock users from it. Stip. ¶¶ 12, 39; *see* Pls.' Br. 33.

Consequently, he has the ability to remedy Plaintiffs' injuries, and the Court has the authority to order him to do so.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant them summary judgment on all of their claims.

December 1, 2017

Jessica Ring Amunson (*pro hac vice*)
Tassity S. Johnson (*pro hac vice*)
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001

Respectfully submitted,

 /s/ Jameel Jaffer
Jameel Jaffer (JJ-4653)
Katherine Fallow (KF-2535)
Carrie DeCell (application for admission forthcoming)
Alex Abdo (AA-0527)
Knight First Amendment Institute at Columbia University
206 Kent Hall
1140 Amsterdam Avenue
New York, NY 10027
(212) 854-9600
jameel.jaffer@knightcolumbia.org

*Counsel for Plaintiffs*