

**U.S. Department of Justice**
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530

---

March 28, 2018

**Via ECF and Fax**

The Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re: *Knight First Amendment Institute at Columbia University, et al. v. Trump, et al.*,
>     No. 17-cv-5205 (NRB)

Dear Judge Buchwald:

    This letter responds to the Court's March 13, 2018 letter, which seeks clarification of the government's position on whether it would violate the First Amendment to block users from the @POTUS and @WhiteHouse Twitter accounts on the basis of viewpoint. Letter from Naomi Reice Buchwald, U.S. Dist. Judge, to Jameel Jaffer, Attorney, Knight First Amendment Inst. at Columbia Univ., et al. (Mar. 13, 2018), ECF No. 66. As an initial matter, the government does not concede—and did not mean to concede at oral argument—that blocking users from those two accounts would run afoul of the First Amendment. Indeed, Plaintiffs' principal First Amendment claim does not apply to the @POTUS and @WhiteHouse accounts any more than it applies to the @realDonaldTrump account. But there are important distinctions between the @POTUS and @WhiteHouse accounts, on the one hand, and the @realDonaldTrump account, on the other, that would make it a much closer question whether the First Amendment prohibits the blocking of users from the @POTUS and @WhiteHouse accounts.

**The @POTUS and @WhiteHouse Accounts Are Not "Forums"—Public or Otherwise—for First Amendment Purposes.**

    The First Amendment arguments that Plaintiffs have raised in this case would not apply to the @POTUS and @WhiteHouse accounts. In particular, as the government noted at oral argument, blocking a user from the @POTUS and @WhiteHouse accounts would not implicate the public forum doctrine. *See* Tr. of Oral Arg. at 26:20 (2018), ECF No. 68. "[P]ublic forum analysis applies *only* where a private party seeks access to public property, such as a park, a street corner, or school auditorium, in order to communicate ideas to others." *W. Farms Assocs. v. State Traffic Comm'n of Conn.*, 951 F.2d 469, 473 (2d Cir. 1991) (emphasis added). In other words, there must be some government-controlled space—whether tangible or "metaphysical,"

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 830 (1995)—that a private party seeks "access to . . . for purposes of expression." *Travis v. Owego-Apalachin Sch. Dist.*, 927 F.2d 688, 691 (2d Cir. 1991).  And here, "forum analysis [would be] misplaced" because blocking a user from the @POTUS or @WhiteHouse account would not restrict "purely private speech that occurs *on* government property." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250 (2015) (emphasis added).

Private speech occurs throughout Twitter—a platform where users unquestionably communicate ideas to others—but it does not occur "on" or "through" the @POTUS or @WhiteHouse accounts.  Rather, those accounts, which presumably could be considered "government property," contain only the government's speech.  *See* Defs.' Summ. J. Br. 15-16, ECF No. 35.  Arguing that the accounts are "forums," as the term is used in public forum doctrine cases, conflates the accounts themselves with the discussions that take place in the wake of the accounts' speech (the "comment threads").  In other words, treating the @POTUS and @WhiteHouse accounts as "forums" would require the same error that Plaintiffs have made in trying to apply forum analysis to the @realDonaldTrump account.  Plaintiffs "seek access" to the account itself, but only the comment threads (which are not part of the account) are spaces where Plaintiffs argue that private parties "communicate ideas to others." *W. Farms Assocs.*, 951 F.2d at 473; *see also* Defs.' Opp'n & Reply Br. 20-21, ECF No. 54.  Blocking a user from a Twitter account generally does not exclude the blocked user from the comment threads.  *See* Stip. ¶¶ 30, 57, ECF No. 30-1.  Accordingly, users blocked from the @realDonaldTrump, @POTUS, or @WhiteHouse accounts would retain their access to the comment threads associated with those accounts.

Reinforcing this conclusion—that users do not speak "on" or "through" any of these accounts (@realDonaldTrump, @POTUS, or @WhiteHouse)—is the fact that, if a tweet from one of the accounts were deleted, the responses to the deleted tweet would be unaffected.  *See* Stip. ¶¶ 22, 26 (explaining that a reply tweet appears under the "Tweets & replies" heading of the user who posts the reply, that "replies . . . are controlled by the user who generates them," and that "[n]o other Twitter user can alter the content of any . . . reply . . . after it is posted").  In fact, perhaps the best illustration of the distinction between the accounts themselves and the comment threads is that, if the accounts were deleted in their *entirety*, all of the replies and replies-to-replies would remain viewable on Twitter, and users could continue responding to those replies.  *See id.*  If deleting the accounts would not delete the comment threads, or even prevent users from continuing to participate in the comment threads, then the accounts themselves are separate from the comment threads and cannot be considered "forums."  Forum analysis, accordingly, should not apply to the @POTUS and @WhiteHouse accounts, just as it does not apply to the @realDonaldTrump account.

**There Are Important Distinctions Between the @realDonaldTrump Account and the @POTUS and @WhiteHouse Accounts that Would Be Relevant to a Court's First Amendment Analysis.**

Even though blocking users from the @POTUS and @WhiteHouse accounts would not

run afoul of the public forum doctrine, those accounts are different from the @realDonaldTrump in significant ways.

First, blocking users from the @POTUS and @WhiteHouse accounts would be government action because, unlike the @realDonaldTrump account, control over those accounts is directly tied to the presidency. The First Amendment applies only to government action; it does not restrict the non-governmental conduct of public officials. *See Buckley v. Am. Fed'n of Television & Radio Artists*, 496 F.2d 305, 309 (2d Cir. 1974) ("[T]he first amendment only restrains action undertaken by the Government."). A federal official engages in government action when he "exercise[s] power 'possessed by virtue of [federal] law and made possible only because [he] is clothed with the authority of [federal] law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). Under this test, blocking users from the @POTUS and @WhiteHouse accounts would be government action, in contrast to the President's decision to block users from his @realDonaldTrump account.[1]

The reason for this distinction is simple: when the President blocks someone from the @realDonaldTrump account, he is not exercising any power "possessed by virtue of [federal] law," nor is his ability to block someone from that account "made possible" by his authority as president. *West*, 487 U.S. at 49. Rather, his ability to block someone from that account is the same as it was when he operated the account as a private citizen. Put differently, his election to the presidency did not change anything about his ability to engage in the specific action at issue in this case. By contrast, President Trump's election *did* affect his ability to block people from the @POTUS and @WhiteHouse accounts. Those accounts follow the institution and office of the presidency, not the particular individual who holds the office. As such, the ability to block people from those accounts is made possible only when an individual becomes president and is thereby "clothed with the authority of [federal] law." *Id.*; *see also O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 423-24 (S.D.N.Y. 2004) (holding that it was not "state action" when a Village Attorney filed a defamation suit against individuals who criticized his official conduct because the power to file a civil lawsuit was "not a power that stemmed solely from his position as Village Attorney").

The second reason the First Amendment analysis differs with respect to the @realDonaldTrump account is that the @realDonaldTrump account is the President's individual account and therefore implicates important associational interests that he retains as a public official. It is well established that public officials do not forfeit their First Amendment rights when they assume office. *See, e.g.*, *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 70 (2d Cir. 1999); *see also Miller v. Town of Hull, Mass.*, 878 F.2d 523, 532 (1st Cir. 1989). Those rights include the freedom to choose the information they consume and the individuals and groups with whom they associate. *See Elrod v. Burns*, 427 U.S. 347, 372 (1976) (plurality op.) (emphasizing each citizen's First

---

[1] As the Court noted at oral argument, "government action" is a more appropriate label than "state action" when assessing whether a specific action of the President is subject to the First Amendment. Tr. of Oral Arg. at 14:23 – 15:6. In conducting that assessment, however, "state action" cases can still supply the applicable legal standard. *See Island Online, Inc. v. Network Sols., Inc.*, 119 F. Supp. 2d 289, 304 (E.D.N.Y. 2000) (highlighting the "analogous state action standards under *Bivens* and § 1983," along with the equivalence of "the statutory 'under color of law' requirement" and "the constitutional doctrine of state action") (citation omitted).

Amendment right "to act and associate according to his beliefs"). And "a corollary of the right to associate is the right *not* to associate." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) (emphasis added). An individual public official therefore retains the freedom to choose *not* to associate with certain individuals or groups.

As the government set forth in its briefs, even if the decision to block users from the @realDonaldTrump account is government action, it should be considered government speech in light of the associational interests at stake. *See* Defs.' Summ. J. Br. 14-18; Defs.' Opp'n & Reply Br. 13-19; *see also Walker*, 135 S. Ct. at 2245-46 ("[G]overnment actions . . . that take the form of speech[] do not normally trigger the First Amendment rules" on viewpoint neutrality.). If the rule were otherwise, then any time an official attended a public event (like a conference or a convention) in his official capacity, the First Amendment would dictate the people with whom he must interact. But that is not the law. *See Bond v. Floyd*, 385 U.S. 116, 136 (1966) (rejecting the argument that the First Amendment "extend[s] more protection to citizen-critics than to legislators" in discussions of public issues); *see also The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 418 (4th Cir. 2006) (holding that it "would "plant the seed of a constitutional case' in 'virtually every' interchange between public official and press" if the First Amendment prohibited public officials from refusing to interact with particular reporters (quoting *Connick v. Myers,* 461 U.S. 138, 149 (1983))). And the rule should not change when an official, such as the President, participates in Twitter's marketplace of ideas—*i.e.*, in what is in essence a digital "conference" or "convention" with millions of overlapping conversations.

Whether government offices or institutions—as distinct from individual government officials—are entitled to the same associational freedom is, concededly, a more difficult question. While the President, as an individual, has a strong associational interest in controlling the people with whom he interacts and the information he consumes, it is less clear that the office of the presidency or the White House (the institutions represented through the @POTUS and @WhiteHouse accounts) share that interest to the same degree. *See Elrod*, 427 U.S. at 372 (describing "the rights of every *citizen* to believe as he will and to act and associate according to his beliefs" (emphasis added)). And if the First Amendment associational interests of those institutions are less significant than the associational interests of the President himself, then blocking users from the @POTUS and @WhiteHouse accounts may fit less neatly within the framework of government speech. As such, blocking users from the @POTUS and @WhiteHouse accounts could pose First Amendment concerns that are not present in this case.

In the absence of a factual record concerning the @POTUS and @WhiteHouse accounts, and in light of the need to "proceed circumspectly, taking one step at a time" when applying the First Amendment to novel circumstances, *Packingham v. North Carolina*, 137 S. Ct. 1730, 1744 (2017) (Alito, J., concurring), any further conclusion about the accounts would be premature. And in light of the fact that forum analysis would not apply to the @POTUS and @WhiteHouse accounts, the government does not concede that blocking users from the accounts on the basis of viewpoint would violate the First Amendment.

5

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

ERIC R. WOMACK
Assistant Branch Director

*/s/ Michael H. Baer*
MICHAEL H. BAER
DANIEL HALAINEN
Trial Attorneys
U.S. Department of Justice,
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Telephone: (202) 305-8573
Facsimile: (202) 616-8460
E-mail: Michael.H.Baer@usdoj.gov

*Counsel for Defendants*