**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

KNIGHT FIRST AMENDMENT INSTITUTE
AT COLUMBIA UNIVERSITY, *et al.*,

      *Plaintiffs*,

  v.

JOSEPH R. BIDEN, JR., President of the United
States, *et al.*,

      *Defendants*.

No. 17-cv-5205 (NRB)

MOTION FOR ATTORNEYS' FEES
AND EXPENSES

---

## INTRODUCTION

Plaintiffs respectfully move for attorneys' fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, for their successful litigation challenging the blocking of individuals based on viewpoint from the @realDonaldTrump Twitter account.

Plaintiffs have filed this motion now to comply with EAJA's statutory deadline. 28 U.S.C. § 2412(d)(1)(A). Because the parties hope to resolve the fees issue without litigation, however, Plaintiffs respectfully ask this Court to stay briefing to allow the parties to negotiate. Plaintiffs propose that should the parties not be able to come to agreement on Plaintiffs' entitlement to fees, Plaintiffs or the government will notify the Court, and Plaintiffs will file a supplemental motion for fees within 45 days. *See Scarborough v. Principi*, 541 U.S. 401, 414 (2004); *United States v. Hristov*, 396 F.3d 1044, 1046 (9th Cir. 2005); *McCarthy v. Bowen*, 824 F.2d 182, 184 (2d Cir. 1987) (noting that this approach can conserve judicial resources).

The government does not oppose Plaintiffs' motion to permit skeletal filing of motion for attorneys' fees with supplement permitted at later date if no settlement reached or Plaintiffs' request for a stay of proceedings.

## ARGUMENT

### Plaintiffs' Entitlement to Fees and Expenses

Under the EAJA, a prevailing party is entitled to attorneys' fees and expenses in a civil action brought against the United States or one of its officials unless the government can establish that "the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Plaintiffs seek attorneys' fees and expenses under the EAJA through this motion for the work done by their attorneys in the above-captioned case before this Court.[1] Plaintiffs also seek attorneys' fees and expenses under the EAJA through this motion for the work done by their attorneys in relation to the government's petition for writ of certiorari before the Supreme Court. *See Dague v. City of Burlington*, 976 F.2d 801, 803 (2d Cir. 1991) ("The Supreme Court itself has confirmed the district court's authority to award attorney's fees for work done before the Supreme Court."). Plaintiffs have filed a motion in the Court of Appeals for attorneys' fees and expenses to which they are entitled for their work before that court, though Plaintiffs have requested that the Second Circuit transfer resolution of that fees motion to this Court. *See Smith by Smith v. Bowen*, 867 F.2d 731, 736 (2d Cir. 1989) ("Applications for appellate fees in this Circuit should be filed directly with the Court of Appeals."); *see also Dague*, 976 F.2d at 804 ("[W]hen questions are presented such as the amount of recovery, [or] the extent to which a

---

[1] The Knight First Amendment Institute is a "party" eligible under the EAJA for an award of attorneys' fees and expenses because it is an "organization described in section 501(c)(3) of the Internal Revenue Code . . . exempt from taxation." *See* 28 U.S.C. § 2412(d)(2)(B)(ii). The Individual Plaintiffs seeking fees under the EAJA are also eligible parties because their net worths at the time of filing this lawsuit did not exceed the statutory threshold. *See* 28 U.S.C. § 2412(d)(2)(B)(i).

plaintiff is a prevailing party . . . determination of a reasonable attorney's fee under the fee-shifting statutes should normally be decided by the district court in the first instance.").

A party has "prevailed" under EAJA if it has "succeeded on any significant issue in litigation which achieved some of the benefit . . . sought in bringing suit." *See Shalala v. Shaefer*, 509 U.S. 292, 293 (1993). Prevailing party status is conferred "whenever there is a court ordered chang[e][in] the legal relationship between [the parties] or a material alteration of the legal relationship of the parties." *Pres. Coal. of Erie Cty. v. Fed. Transit Admin.*, 356 F.3d 444, 452 (2d Cir. 2004) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001)).

Plaintiffs have prevailed under EAJA because they secured a ruling from this Court that materially altered the legal relationship of the parties and also achieved the benefit Plaintiffs sought. The main issue in the litigation was whether defendants' viewpoint-based blocking of critics from the @realDonaldTrump Twitter account was constitutional under the First Amendment. Compl., July 11, 2017, ECF No. 1. In considering the parties' briefing and oral argument on their motion and cross-motion for summary judgment, this Court ruled in favor of Plaintiffs, granting the declaratory relief Plaintiffs sought and finding defendants' conduct unconstitutional. Opinion, May 23, 2018, ECF No. 75 at 74 ("Opinion").

The Court's May 23, 2018 ruling materially altered the legal relationship between the parties by declaring Defendants' conduct to be unlawful. The court expressly observed that its ruling would require Defendants to unblock the Plaintiffs from the President's account, noting that "declaratory relief [was] likely to achieve the same purpose" as injunctive relief because compliance with the Court's declaration "would not be discretionary" given that a president "must act in compliance with the Constitution and other laws." *Id*. And Defendants did in fact

bring their conduct into compliance with the Court's declaration. Shortly after this Court's ruling, defendants unblocked the Individual Plaintiffs, who then had access to the @realDonaldTrump account on the same terms as other users until Twitter suspended the account permanently in January of this year. Moreover, Plaintiffs' success in this Court also resulted in the Defendants' unblocking dozens of other individuals who had been unconstitutionally blocked from the @realDonaldTrump account based on viewpoint.

Plaintiffs also prevailed on their claims before the Second Circuit. Following briefing and oral argument in that court, the Second Circuit panel affirmed this Court's decision finding that the @realDonaldTrump Twitter account was a public forum and that the viewpoint-based exclusion of individuals from that forum violated the First Amendment. *Knight Inst. v. Trump*, 928 F.3d 226 (2d Cir. 2019). The Second Circuit subsequently denied the government's petition for rehearing en banc. *Knight Inst. v. Trump*, 953 F.3d 216 (2d Cir. 2020).

Plaintiffs' status under the EAJA as prevailing parties is not altered by the fact that the Supreme Court ultimately vacated the Second Circuit's decision as moot. *Biden v. Knight First Amend. Inst. At Columbia Univ.*, 141 S. Ct. 1220 (2021) (citing *U.S. v. Munsingwear*, 340 U.S. 36, 39 (1950) (holding that when a case becomes moot before the Supreme Court's review, "[t]he established practice of the Court" is to "reverse or vacate the judgment below")). As the Second Circuit has held, when a party has prevailed on the merits but the judgment has been vacated for mootness, the plaintiff maintains prevailing party status where (1) the case was considered on a "fully developed record;" (2) the lower court's judgment was not overturned on the merits; and (3) the plaintiff did not leave the courthouse "empty handed." *See Kirk v. New York State Department of Education*, 644 F.3d 134 (2d Cir. 2011) (plaintiff did not lose

prevailing party status so as to preclude award of attorney fees under 42 U.S.C. § 1988).
Plaintiffs meet all of these elements here.

Further, defendants will not be able to establish that "the position of the United States
was substantially justified" as required under the EAJA. 28 U.S.C. § 2412(d)(1)(A). "[T]he
government bears the burden of showing that its position was substantially justified, and to meet
that burden, it must make a strong showing that its action was justified to a degree that could
satisfy a reasonable person." *Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007). Importantly, the
government must establish that *both* the government's action that led to litigation *and* the
government's position during the litigation were substantially justified. *See* 28 U.S.C. §
2412(d)(2)(D); *Commissioner, INS v. Jean*, 496 U.S. 154, 158-160 (1990); *Ericksson v. Comm'r
of Soc. Sec.*, 557 F.3d 79 (2d Cir. 2009) ("When assessing the 'position of the United States,' we
review both 'the position taken by the United States in the civil action, [and] the action or failure
to act by the agency upon which the civil action is based.'").

The government will not be able to satisfy its burden here. First, defendants' pre-
litigation conduct was unreasonable and unjustified. Former President Trump and his social
media advisor chose to use Trump's previously-personal Twitter account, instead of the official
@POTUS or @WhiteHouse Twitter accounts, to conduct the official business of the presidency.
Having made that choice, President Trump and his aide then flouted the requirements of the First
Amendment by blocking the Individual Plaintiffs (and many others), based solely on viewpoint,
from what served as the most important source of information about the presidency. Defendants
continued to block these individuals even after Plaintiffs informed them by letter dated June 6,
2017 that the practice was unconstitutional. *See Plaintiffs' Letter to President Trump*, Knight

First Amendment Institute at Columbia University (June 6, 2017),

https://knightcolumbia.org/documents/709727f9ce.

Second, the government's position during the litigation was unreasonable and lacked substantial basis. Among other things, there was no substantial basis for the government to argue that this Court lacked power to grant both injunctive and declaratory relief in a case against a sitting U.S. President—an argument this Court flatly rejected, and that the government abandoned on appeal. There was also no substantial basis for the government to argue that the @realDonaldTrump account was purely a personal account that did not reflect state action—a position flatly contradicted by the numerous facts to which the government stipulated showing that Trump and his aides used the account as an instrument of governance. Indeed, the government changed its position on this issue as the litigation progressed, eventually conceding that the @realDonaldTrump account *did* reflect state action. Despite this concession, however, the government continued to make the implausible argument that the First Amendment did not apply to the act of blocking individuals from such an official account, notwithstanding the absence of any caselaw (from the Second Circuit or any other) supporting this argument. Likewise, the government's argument that the thousands of replies made to each of Trump's tweets amounted to "government speech" lacked substantial basis in the facts or on the law. There was no substantial basis for the government to argue that it had not denied the Individual Plaintiffs access to government information. Finally, having lost all these arguments in this Court and in the Second Circuit, both on appeal and on the government's request for rehearing and rehearing en banc, the government's argument in its petition for certiorari that the Supreme Court's intervention in the case was necessary, despite the absence of a circuit split, in order to

protect the ability of Trump to block people from his Twitter account, was not substantially justified.

In sum, defendants will not be able to meet their high burden of showing that their pre-litigation and litigation positions were substantially justified, and therefore Plaintiffs are entitled to fees under the EAJA.

## The Fees and Expenses to Which Plaintiffs Are Entitled

Plaintiffs are entitled to fees and expenses as outlined in the chart attached as Exhibit 1. The attached fees and expenses are reasonable in light of the complexity of this litigation, the time invested by counsel in this litigation, and the results achieved through the litigation. *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation."). Notably, Plaintiffs here seek only a portion of the fees and expenses to which they are entitled under the statute, as Plaintiffs are not seeking fees for all of the time spent by all of the attorneys and staff who worked on the case over a period of four years. Plaintiffs have excluded all time spent by Jenner & Block summer associates on this matter, as well as all time spent by two legal fellows with the Knight Institute on this case. Plaintiffs have also excluded significant administrative costs and time spent by administrative staff who worked on this matter.

Further, Plaintiffs seek to be compensated at rates that are appropriate given that the case drew on their "distinctive knowledge or specialized skill" in the areas of First Amendment and constitutional law, *Pierce v. Underwood*, 487 U.S. 552, 572 (1988), and given the "limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A)(ii).

The skeletal chart attached as Exhibit 1 indicates the fees to which Plaintiffs' attorneys are entitled. These fees were calculated by taking the number of hours worked by each attorney in each year of the litigation, and multiplying it by the market rate for each attorney's services during that year, as indicated in the chart.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court award fees of $717,006.31 (as calculated on the attached chart).

In the event that this Court denies Plaintiffs' motion to permit skeletal filing of motion for attorneys' fees with supplement permitted at later date if no settlement reached and Plaintiffs' motion to stay briefing to allow the parties to negotiate, Plaintiffs respectfully request that the Court permit them promptly to supplement the instant motion to provide a more detailed account of the fees and expenses to which they believe they are entitled.

Date: June 7, 2021                                    Respectfully submitted,

                                                      */s/ Jameel Jaffer*

Jessica Ring Amunson (*pro hac vice*)                Jameel Jaffer (JJ-4653)
Tassity S. Johnson (*pro hac vice*)                  Katherine Fallow (KF-2535)
Tali R. Leinwand (TL-1027)                           Alex Abdo (AA-0527)
Kara V. Brandeisky (KB5764469)                       Carrie DeCell (CD-0731)
Jenner & Block LLP                                   Knight First Amendment Institute
1099 New York Avenue, NW, Suite 900                    at Columbia University
Washington, DC 20001                                 475 Riverside Drive, Suite 302
                                                     New York, NY 10115
                                                     (646) 745-8500
                                                     jameel.jaffer@knightcolumbia.org

                                                     *Counsel for Plaintiffs*

8

# Exhibit 1

| *Knight Inst. v. Biden*: Attorneys' Fees by phase of litigation | | | | |
|---|---|---|---|---|
| | **Pre-litigation & preparation of Complaint (2017)** | **Summary judgment motion and oral argument (2017-2018)** | **Supreme Court brief in opposition and supplemental filing (2020-2021)** | **Post-vacatur and attorneys' fees research (2021)** |
| **Knight Institute** | $143,481.37 | $260,019.73 | $124,202.71 | $4,595.00 |
| **Jenner & Block** | $89,720.00 | $34,240.00 | $57,390.00 | $3,357.50 |
| **Totals** | **$233,201.37** | **$294,259.73** | **$181,592.71** | **$7,952.50** |

| *Knight Inst. v. Biden*: Attorneys' Fees for Knight Institute | | |
|---|---|---|
| **Attorney or Staffer** | **Hours** | **Total Based on Hours x Rate** |
| Alex Abdo | 40:19:45 | $35,184.61 |
| Carrie DeCell | 195:04:28 | $128,903.86 |
| Jameel Jaffer | 79:59:29 | $75,510.10 |
| Katherine Fallow | 306:40:58 | $269,341.03 |
| Lyndsey Wajert | 40:51:28 | $22,008.91 |
| Meenakshi Krishnan | 2:31:26 | $1,350.28 |

| *Knight Inst. v. Biden*: Attorneys' Fees for Knight Institute | | |
|---|---|---|
| **Attorney or Staffer** | **Hours** | **Total Based on Hours x Rate** |
| Cheryl L. Olson | 15:25 | $6,116.25 |
| Jessica R. Amunson | 61:25 | $55,835.00 |
| Kafayat Adeaga | 33:50 | $6,867.50 |
| Kara V. Brandeisky | 17:75 | $10,021.25 |
| Logan J. Gowdey | 12:25 | $4,287.50 |
| Michael J. Wadden | 14:50 | $6,830.00 |
| Olivia G. Hoffman | 39:50 | $21,657.50 |
| Tali R. Leinwand | 8:25 | $6,778.75 |
| Tassity S. Johnson | 98:75 | $65,643.75 |
| Tricia J. Peavler | 2:00 | $670.00 |

| *2017 Rates for Knight Institute* | | |
|---|---|---|
| **Name** | **Title** | **Rate per hour** |
| Alex Abdo | Litigation Director | $840.00 |
| Carrie DeCell | Staff Attorney | $625.00 |
| Jameel Jaffer | Executive Director | $840.00 |
| Katherine Fallow | Senior Staff Attorney | $840.00 |
| *2018 Rates for Knight Institute* | | |
| **Name** | **Title** | **Rate per hour** |
| Alex Abdo | Litigation Director | $890.00 |
| Carrie DeCell | Staff Attorney | $725.00 |
| Jameel Jaffer | Executive Director | $890.00 |
| Katherine Fallow | Senior Staff Attorney | $890.00 |
| *2019 Rates for Knight Institute* | | |
| **Name** | **Title** | **Rate per hour** |
| Alex Abdo | Litigation Director | $935.00 |
| Carrie DeCell | Staff Attorney | $770.00 |
| Jameel Jaffer | Executive Director | $935.00 |
| Katherine Fallow | Senior Staff Attorney | $935.00 |
| Meenakshi Krishnan | Legal Fellow | $460.00 |
| *2020 Rates for Knight Institute* | | |
| **Name** | **Title** | **Rate per hour** |
| Alex Abdo | Litigation Director | $1,000.00 |
| Carrie DeCell | Staff Attorney | $825.00 |
| Jameel Jaffer | Executive Director | $1,000.00 |
| Katherine Fallow | Senior Staff Attorney | $1,000.00 |
| Lyndsey Wajert | Legal Fellow | $535.00 |
| Meenakshi Krishnan | Legal Fellow | $535.00 |
| *2021 Rates for Knight Institute* | | |
| **Name** | **Title** | **Rate per hour** |
| Alex Abdo | Litigation Director | $1,100.00 |
| Jameel Jaffer | Executive Director | $1,100.00 |
| Katherine Fallow | Senior Staff Attorney | $1,100.00 |
| Lyndsey Wajert | Legal Fellow | $610.00 |

| *2017 Rates for Jenner & Block* | | |
|---|---|---|
| **Name** | **Title** | **Rate per hour** |
| Jessica R. Amunson | Partner | $840.00 |
| Kafayat Adeaga | Project Assistant | $205.00 |
| Logan J. Gowdey | Clerk | $350.00 |
| Michael J. Wadden | Clerk | $470.00 |
| Olivia G. Hoffman | Associate | $535.00 |
| Tassity S. Johnson | Associate | $625.00 |
| Tricia J. Peavler | Library Services | $335.00 |
| *2018 Rates for Jenner & Block* | | |
| **Name** | **Title** | **Rate per hour** |
| Cheryl L. Olson | Paralegal | $370.00 |
| Jessica R. Amunson | Partner | $890.00 |
| Michael J. Wadden | Associate | $490.00 |
| Olivia G. Hoffman | Associate | $640.00 |
| Tali R. Leinwand | Associate | $640.00 |
| Tassity S. Johnson | Associate | $725.00 |
| *2019 Rates for Jenner & Block* | | |
| **Name** | **Title** | **Rate per hour** |
| Jessica R. Amunson | Partner | $935.00 |
| Tali R. Leinwand | Associate | $725.00 |
| Tassity S. Johnson | Associate | $770.00 |
| *2020 Rates for Jenner & Block* | | |
| **Name** | **Title** | **Rate per hour** |
| Cheryl L. Olson | Paralegal | $400.00 |
| Jessica R. Amunson | Partner | $1,000.00 |
| Kara V. Brandeisky | Clerk | $535.00 |
| Tali R. Leinwand | Associate | $800.00 |
| Tassity S. Johnson | Associate | $825.00 |
| *2021 Rates for Jenner & Block* | | |
| **Name** | **Title** | **Rate per hour** |
| Cheryl L. Olson | Paralegal | $405.00 |
| Jessica R. Amunson | Partner | $1,100.00 |
| Kara V. Brandeisky | Clerk | $610.00 |
| Tali R. Leinwand | Associate | $855.00 |